24-2096, Moss v. Board of Education Mr. Moss, you can come up to the podium. And as you've heard, for audio reasons we need you to speak as loudly as you can, make sure that we can all hear you. You have two minutes reserved for rebuttal, so you have three minutes for your preliminary argument. You may proceed when you're ready, sir. Thank you, Your Honors. May it please the Court, I am William King Moss III, Plaintiff Appellant Pro Se. This case presents clear evidence of disparate treatment, disparate impact, and unconstitutional discrimination in hiring practices that systematically exclude Black candidates like myself from employment and employment opportunities. First, my application was treated differently than at least seven non-Black applicants. There is evidence that their applications were reviewed, but no evidence that mine was even considered. Not a single defendant has attested that I was competitively examined before being rejected. This is overt discrimination. Separating me for non-consideration based on race violates my 14th Amendment rights. Moreover, in its 70-year existence, SACIM has never hired a Black principal. This is not a coincidence. Statistical analyses with a probability of less than .01 confirms in SACIM White candidates are elevated to higher-paying jobs while Black candidates are relegated to lower-paying ones. This extreme racial disparity is undoubtedly the direct result of discriminatory hiring policies and practices. Furthermore, in this particular case, a non-Black male got an interview through a relational recommendation, a process designed to exclude Black applicants. And non-Black females were granted interviews without required certifications, while I, a Black male with the required certification, was denied the same opportunity. This intentional shifting of hiring criteria gives non-Black candidates advantages that Black candidates are systematically denied. And the U.S. Supreme Court has deemed these advantages in zero-sum context discriminatory. Most importantly, not one defendant has stated under oath that race played no role in their decisions. Not one defendant has provided material evidence showing that my rejection was based on legitimate non-discriminatory reasons. Finally, the defendant's demeaning, retaliatory, uppity Negro depiction in reaction to my original complaint further supports, if not proves, SACIM's anti-Black motivations. On a whole, the record overwhelmingly supports both disparate treatment and disparate impact discrimination. The defendant's policies violated my constitutional rights, and they have provided no race-neutral justification for their hiring decisions. The defendants cannot have a court's conclusion both ways. If this was summary judgment, attorney affidavits are inadmissible hearsay, leaving defendants with no valid defense against my prima facie case. If this was not summary judgment, then my fact-based allegations of discrimination should have survived dismissal at this pre-answer stage. Accordingly, I respectfully urge this Court to reverse the lower court's ruling and remand for further proceedings. In addition, I would ask humbly and respectfully that this High Court take every opportunity to correct the lower court's errors on the record to protect all of the victims of discrimination under your jurisdiction from the second abuse of Eronian's decisions. The defendant's only reasonable justification was that I lacked experience as a co-assistant principal or principal. But Sachem appointed a known teacher named Kevin Tuffer as an elementary teacher to principal two years prior, despite his having no such experience or required certification. That contradiction establishes pretext and demands reversal in the interest of justice.  Good morning. May it please the Court, I'm Caroline Lanine on behalf of the appellees. This is not a case, a systemic discrimination case. It is a case about a single hiring decision. My question is, doesn't the policy of giving interviews to people who are known by administration constitute disparate impact? That is, are the existing administrators, as he suggests, all white? In which case, people who are known to them are likely to be also white. The rest, you know, I can agree with you. But that issue, which has come up before, it came up in a case involving East Haven as to people being named to the fire department or police, it's a fairly standard disparate impact question. So I'd like you to address that. Sure. I think that there are some differences. One, that's not a policy. The policy is the hiring policy. This was in the procedures about how they went through reviews and interviews. Well, there's a claim that it's a policy, then that might be a fact question. Okay. Well, I think if you look at the record, though, you can see it's not the policy. We have the policy, and then we have the written procedures for human resources. And those are both in the record. Two, it is not saying that these people are going to be hired, that they get preference. It's just that they get a screener. Right, right. But a screener interview saying someone who is an existing unit member can make a recommendation for someone to get that screening interview is not the same as saying that that person will get hired. It's also, I think, a stretch to say that these people, even if the people who make Just to the first point, if the policy this is hypothetical, not what the policy is, but if the policy where we're going to give screening interviews to white people, then the fact that it doesn't mean you get the job, but you get a screening interview, I presume you would agree, is discriminatory. Sure, but that's not the case here. The policy is we may give Right, but your answer to the policy is it's just a screening interview. Right. Well, to go further, though, and again, the procedure says that we may give interviews based on a recommendation of an existing member. Not we may give interviews to white people. We may give interviews to people that you know because they're your family. We may give screener interviews to people recommended by our existing administrators because they have expertise. They may have familiarity with these people. That is facially neutral, right? And as the court looks at all the facts, there's nothing in there showing that there was any sort of intentional discrimination in that. And I think to say that you take a leap from saying we'll give screener interviews, maybe, to people who are recommended by our existing administrators, and there's no way those people will be black or because you're a white person who's making that recommendation, that person will be black. And to show that there was an impact or a known impact or an intended impact by that procedure, there's just no factual allegations in the complaint to support that. What the complaint supports when you look at both the policy and the procedures is that we have our policies that require us to not hire based on race or any other protected characteristic, and then these procedures of how we're going to run interviews. And if one of our administrators says, I think you should speak... If you had a policy that you only interviewed people who live in a particular part of town, and that particular part of town happens to be racially all of one sort, and I don't care if that was black, white, or pink, wouldn't that be enough to make a claim of disparate impact? Possibly. Regardless of whether you intended it to be discriminatory or not. Possibly. I'm not saying what you have, because saying that the administrators are black. I'm just suggesting one where it is clear that what would happen would be a disparate impact. Yes, possibly. However, that's not here, right? That's very different. If you're saying we're only going to hire or give interviews to someone from a specific location that is known to have a majority percentage of a particular race, that's very different than here where we're saying we may give screener interviews to someone you recommend, right? There's no link to that being about race or that the people who may make these recommendations would only base it on race. It's just we're in this town, and so we interview people from this town. I mean, the thing about disparate impact is whoever it has disparate impact. It isn't direct discrimination. Now, I'm not saying, you know, it may be that the administrators are sufficiently broad so that there is no impact, and it may be that he hasn't pled enough to make us think that this occurred, but so far I haven't gotten really an answer from you about that. Well, I think he hasn't pled enough. All he's pled is that there's this procedure, and therefore, obviously, this could never lead to a black person being interviewed, and there are no facts in the complaint to suggest it. Okay. Now, your side has asked for dismissal with prejudice. Dismissal was given without prejudice. I take it would allow him to come back if we decide your way but do not follow to dismissal with prejudice, it would allow him to come back and say, for instance, all of the administrators are white. That is, it would allow him to bring in, in another case, evidence sufficient to make out the disparate impact. I think that even if you were to say all the administrators are white, that still wouldn't plausibly state that claim because that's a great leap that I don't think you can make to say just because they're white, they would never on their own recommend someone that they know professionally who may not be white for an interview, and there's nothing to suggest that. Well, whoever that gets by the beginning, anyway. With respect to the dismissal of prejudice, too, you know, he has twice amended. This would be a third amendment complaint, and the court specifically did address whether he should be permitted to amend again. So as we discussed in our papers, I think there's an inconsistency there with the dismissal being without prejudice, but yet the denial to amend, and it's our position that the denial to amend was appropriate and not an abuse of the court's discretion. Can I ask you how many of the, there were six or seven people interviewed, correct, for the position? Yes. How many of those were recommended by administrators? One. The person who ultimately obtained the job? Yes, yes, and the others all had experience as assistant principal, as did the one who was recommended, and admittedly, as the appellant admits, he did not, and that's not referenced in his resume. But would you agree that it would be problematic if there was a policy, the policy reads we will give screener interviews to someone recommended by administrators, but if the policy read we will give screener interviews only to people recommended by administrators, would that create a problem, even if it's not based on geographic area, race, when the district is predominantly white, apparently, from the little statistics we received? Would that be a problem? I don't know that it would because, you know, these are all professional experienced administrators who work with people not just within the district, but outside the district and come in contact with people all the time. But it certainly would promote a lot of inbreeding and not a lot of inclusion or diversity, wouldn't it? I suppose it would promote not looking at all applicants, but not necessarily mean that there's disparate impacts here, you know, for the reasons I just mentioned, and also saying we're only going to interview those recommended is very different than what we have here, which is we may, and we did, but we also looked at many other outside candidates out of the 90 that we got applications for. Thank you, Ms. Lenine. Thank you. Mr. Moss, you have two minutes for rebuttal. Your Honor, the record simply does not support what the defendant's attorneys are attesting. These are attorney affidavits. They don't have one lick of evidence to support them other than stating that my resume doesn't exactly say assistant principal or principal. There's a litany of experience on my resume that has to do with everything that an assistant principal has to do. I am basically the deputy principal of Lawrence High School in Lawrence, New York. My title is director of academic affairs. I have full support from the superintendent to be an assistant principal in the building. I do the student management. I supervise teachers. I do everything an assistant principal would do with more outreach outside of the school as well as the director of academic affairs and the director of diversity, equity, and inclusion for the district. So that's the reason for the title. It doesn't mean that I don't have assistant principal experience. If anything, I have more than assistant principal experience to be eligible for this position. But to speak to disparate impact, I think one note that's really important here is that this is a case of an inexorable zero. I mean, we're talking about 70 years without a single black principal since the inception of the district. That goes back to Brown v. Board of Education and its inception during a time that was an immediate reaction to Brown v. Board of Education. And that's not to be looked over in this dynamic of circumstantial evidence. We are in a place where at this point in time, Seichem School District is one of the largest school districts on Long Island with 17 schools approximately. To have no black principal with that many schools in 70 years is unimaginable. I can't imagine that not even a green-eyed, half-black, half-white person who married a McCarthy didn't accidentally become principal in 70 years. The fact that that did not happen is statistically unbelievable. It's only believable if there was a current of racism, discriminatory effect against that person becoming a principal. Thank you, Mr. Moss. We'll take the matter under submission. We appreciate arguments of both sides. That concludes today's argument calendar. We have one final case, 24-987, which we are taking under submission. And with that, I'll ask the deputy to adjourn court. All stand adjourned.